**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

HECTOR CAMPOS-CASTILLO,

      Petitioner,

      v.                            Case No. 2:26-cv-01032-KWR-JFR

MARKWAYNE MULLIN, *in his official capacity as*
*Secretary of the Department of Homeland Security*,
TODD BLANCHE, *in his official capacity as*
*Acting Attorney General of the United States*,
TODD LYONS, *in his official capacity as*
*Acting Director and Senior Official Performing the Duties of*
*the Director of U.S. Immigration and Customs Enforcement*,
MARY DE ANDA-YBARRA, *in her official capacity as*
*Field Office Director of the El Paso Field Office of*
*U.S. Immigration and Customs Enforcement,*
*Enforcement and Removal Operations*, and
DORA CASTRO, *in her official capacity as*
*Warden of the Otero County Processing Center*,

      Respondents.

## <u>ORDER GRANTING HABEAS PETITION</u>

    **THIS MATTER** comes before the Court on Petitioner Hector Campos-Castillo's Petition

for Writ of Habeas Corpus (Doc. 1) and Petitioner's Motion for Telephonic Status Conference

(Doc. 8). This Petition turns on whether Petitioner's due process rights were violated when he was

re-detained after being released under 8 U.S.C. § 1226(a). Because Petitioner's conditional parole

has not been properly terminated and he remains detained, Petitioner is detained in violation of his

right to due process. Having reviewed the parties' pleadings, exhibits, and the relevant law, the

Court finds that the Petition is well-taken and, therefore, is **GRANTED**.

**BACKGROUND**

Petitioner, a citizen of Cuba, entered the United States on March 25, 2022. Pet. ¶ 15. It appears that Petitioner was initially detained because he was released on an order of recognizance a few days later. *See id.*; Doc. 1-3 (Order of Release on Recognizance). Upon information and belief, he was placed in removal proceedings at the same time. Pet. ¶ 15. Later that year, Petitioner applied for asylum. *Id.* ¶ 16; Doc. 1-2 (ASC Appointment Notice). In the years that followed, Petitioner lawfully worked, attended his scheduled check-in appointments, and remained released on his own recognizance. Pet. ¶¶ 18–19.

On August 12, 2025, Petitioner was detained following a mandatory hearing for his immigration case. *Id.* ¶¶ 19–21. After the immigration judge granted the Department of Homeland Security's ("DHS") oral motion to dismiss Petitioner's immigration case, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner in the elevator of the courthouse without a warrant. *Id.* ¶¶ 20–22. As of the filing of this Petition, he is detained at the Otero County Processing Center in Chaparral, New Mexico. *Id.* ¶ 1. Petitioner requests that the Court issue a writ of habeas corpus requiring Respondents to immediately release him for violation of the Administrative Procedure Act ("APA") and the Fifth Amendment. *Id.* ¶¶ 3–4.

On April 6, 2026, the Court ordered Respondents to answer. Doc. 3 (Order to Answer). Respondents filed an answer in which they incorporated the arguments made in *Munoz Teran v. Bondi*, No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026). In *Munoz Teran*, the respondents did not raise administrative exhaustion or jurisdiction issues. Neither in this case nor in *Munoz Teran* did Respondents claim that Petitioner is detained under 8 U.S.C. § 1225(b)(1). The Court declines to *sua sponte* raise administrative exhaustion or detention under § 1225(b)(1).

2

*See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

Respondents do not respond to Petitioner's APA and constitutional claims, instead arguing that Petitioner is subject to mandatory detention under § 1225(b)(2)(A). Doc. 6. However, Petitioner does not seek habeas relief for violation of the INA. Rather, the crux of this Petition is whether Petitioner's procedural due process rights were violated.

## I. Whether Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a).

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A) and is not entitled to a bond hearing. Doc. 6 at 2. Petitioner disagrees and contends that his detention is governed by § 1226(a). Pet. ¶¶ 46–48.

Section 1226(a) allows immigration officers, in their discretion, to detain noncitizens or release them on conditional parole. § 1226(a). Release on one's own recognizance is a form of conditional parole under § 1226(a)(2)(B). *See Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("[They were] released on their own recognizance pursuant to DHS' conditional

3

parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)."); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a).").

On March 28, 2022, Petitioner was released on his own recognizance, a form of conditional parole, pursuant to § 1226(a). Doc 1-3; *see also Cabrera-Fernandez*, 28 I. & N. Dec. at 747. Release on recognizance is not categorized as "humanitarian" or "public benefit" parole under 8 U.S.C. § 1182(d)(5)(A). Thus, Petitioner was released pursuant to § 1226(a)(2)(B) which indicates that Petitioner cannot now be detained under § 1225(b). *See Matter of M-S-*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019) ("Yet [§ 1225] (under which detention is mandatory) and [§ 1226(a)] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) (noting that the respondents did not "dispute that [§§ 1225 and 1226] . . . are mutually exclusive"). In addition to being initially released pursuant to § 1226(a), Petitioner, who has been present in the United States for over three years, cannot be deemed "seeking admission" under § 1225(b)(2)(A).

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence

bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the INA, two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain arrested noncitizens, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289); *see also Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044, at *14 (2d Cir. Apr. 28, 2026). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner (1) is an "applicant for admission," (2) who is "seeking admission," and (3) is "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

5

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is "present in the United States" as he has lived in the United States for over three years, and he has not been admitted after inspection by an immigration officer. Pet. ¶ 15. Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for over three years, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Apr. 6, 2026); *see also Entry*, Black's Law Dictionary (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as

6

used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary, https://www.oed.com/dictionary/seek_v#23724107 (last visited Apr. 6, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Apr. 6, 2026). Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[1] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration

---

[1] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g.*, *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the use of the phrase "or otherwise" signals that the term "applicants for admission" has a different meaning than the term "seeking admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Apr. 6, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[2] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner may be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

Further, Respondents' interpretation renders recent amendments to 8 U.S.C. § 1226(c) superfluous. Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

---

[2] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Apr. 6, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise" follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. The *Jennings* Court further noted that § 1226(a) creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Cunha*, 2026 WL 1146044, at *2; *see also Castañon-Nava*, 161 F.4th at 1061; *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494, 506 (S.D.N.Y. 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

Here, Petitioner entered the United States in March 2022 and was issued a NTA and released on his own recognizance. Pet. ¶ 15; Doc. 1-3. He has continuously remained in the United States for over three years. Pet ¶19. Respondents do not suggest, or point to any facts indicating, that Petitioner was seeking lawful, physical entry into the United States at the time of his arrest. Rather, he was arrested inside an immigration courthouse following a hearing. *Id.* ¶¶ 19–21. Applying this statutory interpretation to the present facts, the Court finds that Petitioner is not

9

"seeking admission" under § 1225(b)(2)(A). Accordingly, Petitioner's detention is governed by § 1226(a).

**II.      Whether a pre-deprivation process is necessary for due process after a noncitizen is released on his own recognizance under § 1226(a).**

Petitioner argues the revocation of his conditional parole and detention without providing any pre-deprivation process violates his right to procedural due process. Pet. ¶¶ 47–55. Respondents do not respond to the merits of this constitutional challenge and only address whether he is subject to mandatory detention under the INA. Doc. 6 at 3. But Petitioner does not allege that his detention violates the INA. *See* Pet. at 9–15. Thus, the Court will consider the due process argument.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens."). Because noncitizens "do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009).

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process.

*Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)).

### A.     Petitioner's liberty interest.

Petitioner contends that he has a liberty interest in his continued release on his own recognizance. Pet. ¶ 49. Since Respondents rested their entire response on their statutory argument, they put forth no argument that Petitioner does not have a liberty interest in his continued release. The Court finds that Petitioner's liberty interest, at the very least, entitles him to the procedures authorized by Congress.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A noncitizen that is considered to have not entered the country is only entitled to "the procedure authorized by Congress." *Sierra*, 258 F.3d at 1218 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 694.

### 1.     Constitutional precedent.

Petitioner posits that he has a due process right in notice and a hearing prior to being detained again because he has a protected liberty interest in his conditional parole. Pet. ¶¶ 47, 49, 55. Respondents offer no argument to counter Petitioner's constitutional claim. Doc. 6 at 3.

11

In finding that a noncitizen's conditional release rises to the level of a protected liberty interest, several courts have turned to the line of Supreme Court cases finding a protected liberty interest in parole, probation, and pre-parole. *See, e.g.*, *Singh v. Carnes*, No. 1:26-cv-00235-DHU-GJF, 2026 WL 599138, at *3 (D.N.M. Mar. 3, 2026); *J.A.E.M. v. Wofford*, 812 F. Supp. 3d 1058, 1066 (E.D. Cal. 2025). To determine whether a conditional release creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted).

In *Morrissey v. Brewer*, the Supreme Court found that paroled individuals enjoy several "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[] to live up to the parole conditions." 408 U.S. 471, 482 (1972). Given the "grievous loss" caused by revocation of parole, the Court found that those released on criminal parole were entitled to due process before having their parole revoked. *Id.* The Court expanded this principle to criminal probation, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and even a pre-parole program, *Young v. Harper*, 520 U.S. 143, 145 (1997).

A noncitizen's civil, conditional release and a citizen's criminal parole are parallel in several core constitutional respects. Like release on parole, or any release from detention, Petitioner's release "enables him to do a wide range of things" including work, "be with family and friends," and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Since his release on March 28, 2022, Petitioner has not been convicted of any crimes, has worked full time, and has established "concrete ties" in this country with his spouse and child. Pet. ¶ 51. Although Petitioner was subject to requirements of his release, including appearing at

immigration check-ins and hearings, Doc. 1-3, a criminal parolee is also subjected "to many restrictions" not applicable to those not convicted of a crime, *Morrissey*, 408 U.S. at 482. Respondents make no argument as to why *Morrissey* and its progeny should not apply in the immigration context. The distinction between Petitioner's status as a noncitizen and the citizen in *Morrissey* is not necessarily dispositive. *See Zadvydas*, 533 U.S. at 693 (finding that the Due Process Clause applies to all people within the United States regardless of their status (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982))).

However, *Morrissey* does not necessarily stand for the proposition that a noncitizen, previously released pursuant to § 1226(a), is entitled to a hearing prior to being detained again. Although *Morrissey* found that a criminal parolee was entitled due process during the revocation of parole, the process due was only "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 484–85. The Court found that "after the arrest," due process required that an individual, not directly involved in the case, determine that reasonable ground existed for revoking parole. *Id.* The determination by this individual is meant to determine if there "is probable cause or reasonable ground to believe that the arrested parolee" violated their conditions of parole and whether it is justified to "hold the parolee for the final decision of the parole board on revocation." *Id.* at 487. This language indicates that the arrest, or Petitioner's re-detention, may occur prior to any hearing. The phrases "at or reasonable near" and "as promptly convenient after arrest," do not suggest that a hearing must be conducted before Petitioner is detained again. *Morrissey* appears to characterize the deprivation as "the final decision" revoking parole, not the arrest and detention prior to any final decision revoking release as Petitioner suggests. Without any input from Respondents, it remains unclear whether

Petitioner's arrest operates as the "final decision" revoking his conditional release. Regardless, as discussed next, the Court finds that Petitioner was not afforded the statutory minimum due process authorized by Congress.

### 2.    The statutory minimum has not been met.

Petitioner asserts that his constitutional rights have been violated because he did not receive the minimal procedural due process rights he is afforded by statute. Pet. ¶ 51. Although Petitioner does not point to a particular regulation that requires certain procedures, like notice and a hearing, the Court agrees with Petitioner that the statutory minimum has not been met.

Under even the minimal procedural due process rights afforded to noncitizens, Petitioner is entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218. 8 U.S.C. § 1226(b) governs the revocation of bond or parole and provides that the "Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." A relevant regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

Beginning with the plain text, *see Koerber*, 10 F.4th at 1112, the Attorney General is afforded immense discretion to revoke parole "at any time," § 1226(b). Further, the regulations specifically provide for Petitioner's exact situation. Petitioner, a noncitizen, was arrested and taken into custody before being released. Pet. ¶ 15. Under the regulations, "such release may be revoked at any time in the discretion of [a listed official], in which event the alien may be taken into physical

14

custody and detained." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). There is nothing in the text of the statute or regulation that suggests a hearing is required before detaining a noncitizen released under § 1226(a). Although the text does not explicitly grant Petitioner the liberty interest he seeks, Petitioner is still entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218; *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

Petitioner was granted release on his own recognizance by a Form I-220A. Doc. 1-3. The Form specified his release was in "accordance with section 236" of the INA and that he was "released on [his] own recognizance provided [he] comply with the [the conditions of release]." *Id.* As discussed in Part I, *supra*, release on one's own recognizance is a form of conditional parole under § 1226(a)(2)(B).

While the regulations allow for Petitioner's release to be revoked "at any time," it must be in the discretion of "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge." There is no indication that any of these officials revoked Petitioner's conditional release. Petitioner's Form I-220A provides a section in which the order of release may be canceled (1) for failure to comply with the conditions of release or (2) because the noncitizen was "taken into custody for removal." Doc. 1-3. Within this section, a date and signature line for the "Immigration Officer Cancelling Order" is provided. On Petitioner's Form I-220A, all sections that grant his conditional release are filled in and signed, but the section to cancel his release is entirely blank. This suggests that no officer, let alone a listed officer, revoked Petitioner's

15

conditional parole. Respondents provide no argument or documentation to the contrary. The phrase "in which event" in the regulation demonstrates that revocation by a listed official is a necessary precondition to Petitioner being "taken into custody and detained." Petitioner has a liberty interest in Respondents properly revoking his conditional parole prior to detaining him again. *See Sierra*, 258 F.3d at 1218.

**B.      The *Mathews* factors favor Petitioner.**

Having established that Petitioner has a protected interest in Respondents following the regulations authorized by Congress, the Court will consider what process is due.

In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1.      Private interest at stake.**

The first *Mathews* factor considers the nature of the private interest at stake. Petitioner has two interests at stake. His basic interest in being free from detention is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Petitioner's interest in the procedural protections authorized by Congress is also at stake. *See Sierra*, 258 F.3d at 1218 (quoting *United States ex rel. Knauff*, 338 U.S. at 544). Because of the gravity of these interests, the first factor weighs in favor of Petitioner.

### 2.    Risk of erroneous deprivation and the value of additional safeguards.

Under the procedure applied to Petitioner, there exists a significant risk of the erroneous deprivation of Petitioner's conditional parole because he was detained before the parole was properly revoked. Petitioner's Form I-220A did not indicate that his conditional parole had been revoked, and no immigration official signed or checked any box revoking the parole. Further, Petitioner alleges that he was not arrested pursuant to a warrant and that his conditional parole had been revoked prior to arrest. Respondents do not refute these facts. The value of an additional safeguard, such as following the procedures put forth by Congress, would greatly reduce the risk of an erroneous deprivation of conditional parole. Respondents have not followed the safeguards put in place by Congress in revoking Petitioner's conditional parole, thereby creating a heightened risk of erroneous deprivation. Congress authorized these procedures for a reason, and Petitioner is entitled to their protections. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) (finding "that when Congress enacts a procedure, aliens are entitled to it" (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011))). Therefore, the second *Mathews* factor weighs in favor of Petitioner.

### 3.    Government's interest.

When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34. The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress

17

more complete." *Flores*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Although the Government's interest in immigration enforcement weighs heavily, the Government's interest in detaining a noncitizen, such as Petitioner, without properly revoking his conditional parole does not weigh nearly as heavily as general, lawful immigration enforcement. The fiscal and administrative burdens—slight, if any—do not provide adequate justification for the agency foregoing procedural safeguards put in place by Congress to provide an organized process for revoking conditional release. The fiscal and administrative burden of following the congressionally authorized procedures to properly revoke conditional parole pales in comparison to the cost and administrative strain caused by Respondents' decision to detain noncitizens without properly revoking their conditional parole. Although the Government has a weighty interest in enforcing its immigration policies, such an interest does not tip the scale so far in its favor to justify its failure to follow congressionally authorized procedures. Thus, the third *Mathews* factor also weighs in favor of Petitioner.

Accordingly, the Court finds that, under the *Mathews* factors, Petitioner should have had his conditional parole properly revoked before being arrested and re-detained.

## III.    <u>Immediate release is warranted</u>.

Petitioner argues that immediate release is warranted because a post-deprivation bond hearing is not an adequate remedy. Doc. 9 at 2. Respondents do not address the requested remedy in their response. Doc. 6. Petitioner was initially re-detained in violation of his ongoing conditional parole. Therefore, Petitioner must be released and not detained again until his conditional parole has been properly revoked.

In essence, habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) "The typical remedy is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

Again, there is no evidence in the record demonstrating that Petitioner's conditional parole has been properly terminated. Petitioner's Form I-220A indicates that no immigration official signed off on canceling his release. Doc. 1-3. Ordering a bond hearing, which Petitioner is entitled to regardless, cannot cure the fact that he is detained while his conditional parole is still ongoing because it has not been properly terminated. Release is required to remedy the ongoing due process violation caused by Petitioner's detention while his conditional parole has not yet been terminated. The Court does not see how ordering a bond hearing would remedy a wrong that has been ongoing since the outset of Petitioner's re-detention. Therefore, Petitioner must be released.

## IV.   Petitioner does not have a claim under the Administrative Procedure Act.

Petitioner also asserts an APA claim. Pet. at 9–12. The APA provides a cause of action only where there is no other adequate remedy in court. 5 U.S.C. § 704. Challenges to the fact or duration of immigration detention are cognizable in habeas and "must be brought in habeas." *J.G.G.*, 604 U.S. at 672. In a concurring opinion, Justice Kavanaugh explained that "claims under the APA are not available when there is another 'adequate remedy in a court,' . . . ." *Id.* at 674 (Kavanaugh, J., concurring). He further explained that "habeas corpus, not the APA,

19

is the proper vehicle here." *Id.* Because the relief Petitioner seeks, release from custody, is attainable through habeas corpus, the APA does not supply an independent cause of action.

## V.    **Attorney's Costs and Fees under the EAJA.**

Finally, Petitioner requests that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). Considering Tenth Circuit precedent and the relevant procedure, the Court finds that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner continue to pursue costs and fees, Petitioner is instructed to file an EAJA application following the appropriate procedure.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that the Petition (Doc. 1) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order. Petitioner's Motion for Telephonic Status Conference (Doc. 8) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Respondents shall release Petitioner within **twenty-four (24) hours** of the entry of this order under the same conditions that were in place prior to his detention. Petitioner shall not be detained again unless his conditional parole has been properly terminated prior to his arrest and detention.

**IT IS FINALLY ORDERED** that the parties file a joint status report within **seven (7) days** of the entry of this order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

21